IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**DANIEL CURTIS,**

        Plaintiff,

vs.                                                          Civ. No. 07-1127 JCH/LFG

**OFFICER GERALD R. SHELDEN and
OFFICER NICK WILSON, individually
and in their official capacities as police
officers for the City of Albuquerque,**

        Defendants.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's *Motion for Judgment as a Matter of Law*, filed December 9, 2008 [Doc. 75]. The Court tried the underlying case before a jury beginning November 17, 2008. At the close of evidence, Plaintiff moved for judgment as a matter of law on all claims, pursuant to Federal Rule of Civil Procedure 50(a). The Court denied this motion. On November 20, 2008, the jury returned a verdict in favor of Defendants on all claims. The Clerk of Court entered a Judgment on the jury verdict in favor of Defendants on December 1, 2008. *See* Doc. 73. On December 9, 2008, Plaintiff timely filed this motion pursuant to Federal Rule of Civil Procedure 50(b).[1] The Court having considered the motion, briefs, evidence at trial, and

---

[1] Plaintiff filed a Motion for Partial Summary Judgment on May 6, 2008 [Doc. 21], which the Court denied in a Memorandum Opinion and Order issued on November 10, 2008 [Doc. 49]. Defendants argue that the Court should treat this current motion as a motion to reconsider the denial of Plaintiff's motion for partial summary judgment, and should therefore be guided by the standards of Rule 60(b) of the Federal Rules of Civil Procedure. Although Plaintiff's current motion incorporates and refers to some of the same arguments that he made in his motion for partial summary judgment, and although he refers to portions of the Court's ruling on his motion for partial summary judgment in his current motion, this motion is a proper Rule 50 motion for judgment as a matter of law, claiming alleged error in the jury instructions and

relevant law, and being otherwise fully informed, finds that Plaintiff's motion is not well taken and will be denied.

## FACTUAL BACKGROUND

The Court's Memorandum Opinion and Order on Plaintiff's motion for partial summary judgment [Doc. 49] contains an extensive factual background of this case, so only a brief summary will be given here.  This case stems from a traffic stop involving a vehicle in which Plaintiff, then 22 years old, was riding with several of his friends.  The stop ultimately resulted in Plaintiff's arrest on a disorderly conduct charge.  What led to that charge, as well as the charge's validity, is a matter of dispute.  The stop took place late at night in the parking lot of a crowded restaurant popular with a college-age crowd.  The stop initially resulted in the driver's arrest on an outstanding warrant.  After the driver was taken to the back of a patrol car to be processed, Plaintiff, who had been riding in the back of the vehicle, opened the door and started to take a step out.  Whether he asked questions such as why his friend was being arrested and whether the rest of them were free to go eat is disputed, but it is undisputed that Defendant Officer Wilson ordered him to get back in the vehicle and that Plaintiff, after a few seconds, complied when Wilson gave the order a second time.  As he was closing the door, Plaintiff swore loudly and either said he had done nothing wrong or asked what he had done wrong.  After that, he remained in the back seat with the doors closed and the windows up.

At that point, two other police officers, Defendant Gerald Sheldon and Angelo Lovato, who had been working off-duty security for the restaurant, came out to the parking lot. Defendant Wilson pointed out Plaintiff to the other officers as someone who he identified as a

---

lack of evidence at trial to support the given instructions or the verdict for the Defendants.

disturbance.

Defendant Sheldon approached the vehicle and engaged Plaintiff in a discussion. What happened next was disputed at trial, with Plaintiff claiming that Defendant Sheldon kept saying that he had done something wrong, but refusing to specify what Plaintiff had done that was objectionable, and Plaintiff also claiming that his demeanor was calm throughout the encounter, with an unraised voice and no profanities spoken. Defendant Sheldon testified that Plaintiff was screaming obscenities and stirring up a gathering crowd. Defendant Sheldon then ordered Plaintiff out of the vehicle and placed Plaintiff under arrest for disorderly conduct in what he claimed was an effort to preserve scene security.

Plaintiff also claimed that, when he was arrested, Defendants did not check the tightness of his handcuffs and ignored his complaints that the cuffs were causing severe pain, and that he suffered permanent injury as a result of the cuffs being too tight. Defendants presented evidence that they checked the tightness of Plaintiff's cuffs, that Plaintiff did not appear to be injured when he was at the jail, and that his injury could have occurred even with proper cuffing.

## LEGAL STANDARD

A motion under Rule 50 should only be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury [did] not have a sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In deciding a Rule 50 motion, the Court must "draw[] all reasonable inferences in favor of the nonmoving party" and should grant the motion only "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1112 (10th Cir. 2004) (internal citations omitted). This standard "is a difficult and high [one] for the movant to satisfy." *Smith v. United States*, 555 F.3d 1158, 1160

(10th Cir. 2009). In reviewing the evidence in the record, the Court must "refrain from making credibility determinations or weighing the evidence." *The Guides, Ltd. v. Yarmouth Group Prop. Mgmt.*, 295 F.3d 1065, 1073 (10th Cir. 2002).

## **DISCUSSION**

In his Rule 50(b) renewed motion for judgment as a matter of law, Plaintiff argues that the Court erred in: (1) using the term "good faith" in one of the jury instructions; (2) instructing the jury that an arrest is lawful as long as probable cause existed to support an arrest on some offense and informing the jury that it is a misdemeanor to resist, obstruct, or refuse to obey an officer; and (3) submitting the question of excessive force to the jury when there was allegedly unrebutted medical testimony concerning nerve damage to Plaintiff's wrist. The Court addresses each of these arguments in turn.

    A.    <u>Use of the Term "Good Faith"</u>

In his motion, Plaintiff objects to the inclusion in Jury Instruction No. 5 of the following sentence: "Defendants claim that they acted in good faith and that their actions were authorized by clearly established law and were objectively reasonable given the facts and circumstances facing them." He claims that this raises a qualified immunity defense, and that qualified immunity is a legal issue for the court.

As an initial matter, Plaintiff never objected to any part of Jury Instruction No. 5 prior to making this motion. *See* Exhibit A to Defendants' Response to Plaintiff's Motion for Judgment as a Matter of Law (hereinafter "Defts' Resp.") [Doc. 76] ( transcript of objections made to Jury Instructions on November 19, 2008). Rule 51(c) of the Federal Rules of Civil Procedure requires that a party objecting to a jury instruction "must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). If a party fails to make a

timely objection on the record to a proposed jury instruction, the Court will only review the instruction for plain error. *See* Fed. R. Civ. P. 51(d)(2); *Veile v. Martinson*, 258 F.3d 1180, 1187 (10th Cir. 2001). In civil cases, plain error refers to "errors which seriously affect 'the fairness, integrity, or public reputation of judicial proceedings,'" and where the error "resulted in a 'miscarriage of justice'" or was "patently plainly erroneous and prejudicial." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1516 (10th Cir. 1984) (citations omitted). For this reason, "the plain error rule is an 'extraordinary remedy which is invoked only in exceptional circumstances to avoid a miscarriage of justice.'" *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1408 n. 5 (10th Cir. 1991) (citation omitted).

The whole of Jury Instruction No. 5 merely sets forth each party's basic claims and defenses in an attempt to convey to the jury the issues for them to decide. The instruction does not contain statements of law or legal elements of claims or defenses, which are included elsewhere in the instructions, and which do not include a qualified immunity defense. Also, although this portion of Instruction No. 5 mentions "good faith," it also says that Defendants claim that their actions were authorized by clearly established law. A qualified immunity defense would seek to demonstrate just the opposite–that even if Defendants violated Plaintiff's constitutional rights, the law was *not* clearly established, so that Defendants could not have known that their actions violated those rights. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008). As such, the cited portion of Instruction No. 5 does not create a "qualified immunity defense" as claimed by Plaintiff, nor does it "undermine[] or confuse[] the Court's otherwise legally correct instruction (Instruction 7) on the objective standards for probable cause." Pl. Mot. [Doc. 75] at 1-2.

The Court's instructions, particularly Instructions No. 7 and 9, instructed the jury on the

objectively reasonable officer standard and plainly set out the Fourth Amendment standards as contained in the caselaw and as discussed by the Court with both parties. In addition, the special verdict form contained no mechanism by which the jury could find that Defendants had qualified immunity.[2] Thus, even if the use of the term "good faith" in Instruction No. 5, which was not objected to by Plaintiff, somehow deviated from the remainder of the instructions, it did not create a qualified immunity defense and was hardly an invitation by the Court to the Defense to "make stuff up" as claimed by Plaintiff. *See* Pl. Mot. [Doc. 75] at 2-3. Plaintiff has failed to establish a substantial doubt as to whether this instruction, considered in the context of the jury instructions as a whole, properly guided the jury in its deliberations.

However, even if the cited portion of Instruction No. 5 could somehow be seen as setting forth a qualified immunity defense, Plaintiff misconstrues the applicability of *Keylon v. City of Albuquerque* to this type of case. The *Keylon* court did not hold that qualified immunity should never be a jury question, but rather held that the question of qualified immunity should not have been submitted to the jury in that case "[b]ecause there were no disputed issues of material fact." *Keylon*, 535 F.3d at 1217. In contrast to *Keylon*, the very heart of this case involved exceedingly divergent factual assertions concerning the circumstances of Plaintiff's arrest, the nature of his

---

[2] For instance, on the question of unlawful arrest, the verdict form asked "Do you find by a preponderance of the evidence that Defendant Officer Gerald R. Shelden violated Plaintiff's constitutional right to be free from unlawful arrest as defined in the jury instructions?" Special Verdict Form [Doc. 72] at 1. If the jury had answered "yes" to the question concerning violation of Plaintiff's constitutional rights, the next question the jury would have had to answer was "Do you find that Plaintiff has shown by a preponderance of the evidence that he suffered damages as defined in the jury instructions?" *Id*. at 2. If the verdict form had contemplated a qualified immunity defense, it would have had to contain a question following the question on constitutional violation and preceding the question on damages regarding whether the law was clearly established such that a reasonable person in the defendant's position would have known that he was violating the plaintiff's rights. *See Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

handcuffing, and the extent of his injury. Therefore, unlike *Keylon*, where "in the district court's order denying summary judgment, the court pointed to no specific disputed facts and discussed only questions of law," 535 F.3d at 1214, this Court's order denying summary judgment explicitly discussed the material factual disputes that prevented it from granting summary judgment. *See, e.g.,* Memorandum Opinion and Order Denying Plaintiff's Motion for Partial Summary Judgment [Doc. 49] at 13-15 (detailing material disputes over the events leading to Plaintiff's arrest). Thus, if the Court had given a qualified immunity instruction, which version of the facts the jury chose to accept would have governed whether the Defendants' actions were objectively reasonable, thus rendering it a proper question for the jury. *See Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

      B.      <u>Instruction on Alternative Basis of Plaintiff's Arrest</u>

Plaintiff also alleges that the Court committed error stemming from the inclusion in Instruction No. 7 of the following language: "Even if probable cause did not exist for the crime for which the arrest was made, the arrest is still lawful as long as probable cause existed to support an arrest on some offense." Plaintiff does not appear to contend that this language itself was error, as it is a proper statement of the law, but he instead alleges that the evidence adduced at trial did not support the accompanying portion of the instruction instructing that it is a misdemeanor in Albuquerque to refuse to obey a lawful order of a police officer. Directly following the language quoted above, Instruction No. 7 said "Defendant Shelden maintains that probable cause existed to arrest Plaintiff for either Disorderly Conduct under the law of the State of New Mexico or Resisting, Obstructing, or Refusing to Obey an Officer under the City Code for the City of Albuquerque." The instruction then defined Disorderly Conduct and Refusing to Obey an Officer according to the respective statutes.

As with his complaint regarding Instruction No. 5, Plaintiff failed to properly make or preserve his objection to this instruction. Although Plaintiff did mention Instruction No. 7 when making his formal objections, the sum total of his objection was "Judge, Instruction Number 7, the false arrest instruction, the plaintiff objects to the second paragraph." Defts' Resp. [Doc. 76], Ex. A at 3. The language Plaintiff complains of now is in the fifth and seventh paragraph of Instruction No. 7. Paragraph two has no connection to Plaintiff's allegation of error, nor does Plaintiff even mention paragraph two in his briefs. Even if paragraph two were somehow relevant to the current dispute, Plaintiff's objection did not sufficiently inform the Court of his grounds for disagreement as required by Fed. R. Civ. P. 51(c)(1). *See Russell v. Plano Bank & Trust*, 130 F.3d 715, 719-20 (10th Cir. 1997). Plaintiff's allegation of error will thus be reviewed only for plain error. *See* Fed. R. Civ. P. 51(d)(2); *Veile v. Martinson*, 258 F.3d 1180, 1187 (10th Cir. 2001).

Plaintiff's argument that he is entitled to judgment as a matter of law in this case is little more than a demand for this Court to substitute its determination of witness credibility for that of the jury, something the Court clearly cannot do. *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) ("[w]hen the party with the burden of proof has moved for judgment as a matter of law, the motion may be granted only where [the movant] has established his case by evidence that the jury would not be at liberty to disbelieve.") (internal quotation omitted). As noted by Plaintiff in his brief in support of his Rule 50 motion, when the Court denied Plaintiff's motion for summary judgment, it called the issue of whether sufficient evidence existed to constitute probable cause for a disorderly conduct arrest a "close question." Indeed it was a close question, but the same factual disputes that precluded the Court from granting summary judgment bore themselves out in trial testimony as well, thereby making it improper for the Court to

remove the case from the jury's hands, either before or after the verdict.

Sufficient testimonial evidence existed for the jury to find at least probable cause for an arrest for disorderly conduct or failure to obey an officer. For instance, Officer Shelden testified, at length, about how Plaintiff's yelling was "stirring people up" and how it was compromising scene security. *See* Defts' Resp. [Doc. 76] Ex. B at 139:1-140:19, 168:1-25. He discussed how a crowd of people formed as Plaintiff screamed profanities, and how Plaintiff's yelling appeared to be contributing to the gathering of the crowd. *See id.* at 126:1-14. He also discussed how he approached Plaintiff's vehicle and told him to stop yelling, and that when Plaintiff ignored him and continued to yell and create a scene, he placed him under arrest. *See id.* at 139:22-140:9, 165:15-168:13. Despite stating that he had moral concerns about Plaintiff's repeated swearing, *id.* at 168:19-25, Officer Shelden explicitly testified that he did not arrest Plaintiff for the content of his speech, but for the effect his yelling and speech were having on the crowd. *See id.* at 139:1-8, 170:7-22. Plaintiff, on the other hand, testified that he never yelled and only used one expletive during the entire confrontation. The jury therefore had to weigh the credibility of each witness in order to sort out exceedingly different versions of the events.

In his briefs, Plaintiff repeatedly challenges Officer Shelden's credibility. *See, e.g.,* Pl. Mot. [Doc. 75] at 3 n.1 ("In this case, it is Plaintiff's position that Officer Shelden did 'make stuff up.'"); *id.* at 5 ("The offider [sic] that heard [the yelling] and made the arrest admits to being untruthful under oath, and that he files criminal complaints with false information put there as a matter of habit and practice."); Plaintiff's Reply [Doc. 77] at 2 n.1 ("No one seriously believes [Plaintiff] was yelling profanities from inside the car."). The jury rejected arguments such as these, as they necessarily accepted Officer Shelden's version of events in reaching their verdict. Arguments on witness credibility have no place in a Rule 50 motion, as the Court cannot revisit

9

the jury's credibility determinations.  Plaintiff argues that even if everything that Officer Shelden testified to is accepted as true, he should still win as a matter of law because there was no basis for an arrest.  But, for the same reasons the Court denied Plaintiff's motion for summary judgment, and based on the testimony adduced at trial, Plaintiff's motion on this issue is denied.

    C.    Excessive Force

Plaintiff also claims that "there was unrebutted expert medical testimony concerning the nerve damage caused by incorrect and unduly prolonged restraint in a too-tight handcuff on one hand."  Pl. Mot. [Doc. 75] at 6.  As with his argument on the validity of his arrest, Plaintiff's assertion related to excessive force also mischaracterizes the evidence on the record.  Although Plaintiff claims that "Defendants offer no alternative explanation for Plaintiff's nerve damage," Pl. Reply [Doc. 77] at 4, Plaintiff's own medical expert, Dr. DeRosa, testified that she could not give an opinion as to whether Plaintiff's injury was caused by his handcuffs being applied too tightly or whether the handcuffs were applied correctly and he was from struggling and moving around with the handcuffs on.  Defendants also presented evidence that they used a reasonable amount of force in accordance with their training when they handcuffed Plaintiff, and that it was their pattern and practice to check handcuffs to ensure that there is adequate spacing between the cuff and the wrist.  *See* Defts' Resp. [Doc. 76], Ex. B at 53:8-59:21, 171:8-174:23.  In addition, Defendants presented evidence that, when he arrived at the jail, Plaintiff had full use of his hand to sign documents, did not complain of an injury to his hand, and did not have an injury noted on the jail intake form.  This evidence was sufficient to allow a reasonable jury to find in Defendants' favor on Plaintiff's excessive force claim.[3]

---

[3] As an aside, the Court finds Plaintiff's characterization of juror comments from a post-trial interview and his use of those comments to argue that the jury was irrational to be

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Judgment as a Matter of Law* [Doc. 75] is DENIED.

_____
UNITED STATES DISTRICT JUDGE

---

inappropriate. What a juror may have ultimately said when aggressively questioned, even badgered, by an understandably frustrated Plaintiff's attorney does not go to the sufficiency of the evidence in this case or even necessarily reflect the actual decision-making that went into the verdict and, absent demonstrated misconduct, such comments have no place in a Rule 50 motion.